IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JONES PARTNERS CONSTRUCTION, LLC, § § § Plaintiff, § § § VS. § § APOPKA PLAZA ASSOCIATES, LLC, et al., § § § Defendants. § | Civil Action No. 3:04-CV-1294-D |

MEMORANDUM OPINION
AND ORDER

In this removed action, plaintiff Jones Partners Construction, LLC ("Jones Partners") sues defendant U.S. Bank National Association ("U.S. Bank") for fraud arising from conduct that it contends induced it to act as project manager for a construction project that U.S. Bank knew lacked sufficient loan proceeds to pay for its services. U.S. Bank's motion for summary judgment presents the questions whether Jones Partners can establish that U.S. Bank made actionable misrepresentations or had a duty to disclose the information that Jones Partners alleges was fraudulently concealed. Concluding that Jones Partners has failed to adduce evidence that would permit a reasonable trier of fact to find in its favor on its fraud claim and that U.S. Bank had no duty to disclose, the court grants the motion and dismisses Jones Partners' action against U.S. Bank. Jones Partners also moves for leave to amend its complaint. The court denies the motion because the amendment would be futile.

I

In August 2000 Firstar Bank N.A. (now named U.S. Bank) made a loan of $1,425,000 million to defendant Apopka Plaza Associates, LLC ("Apopka") to purchase land and develop and construct a shopping center in Apopka, Florida (the "project").  Tracy Elliott ("Elliott"), an officer at U.S. Bank, had served as the primary loan officer to Stephen R. Walker ("Walker"), an Apopka principal, for at least five prior commercial real estate projects.  Jones Partners maintains that U.S. Bank diverted a large part of the loan funds as part of a cover-up involving an improper personal business deal between Elliott and Walker, and then solicited Jones Partners to build the project, without disclosing that the remaining loan funds were insufficient to pay for construction on the project.[1]  It asserts that it relied on U.S. Bank's statements to enter into a contract with Apopka to serve as project manager.  Jones Partners maintains that it halted construction on the project after discovering the fraud and due to non-payment, but that U.S. Bank was able to recoup its loan through foreclosure.

In May 2002 Elliott attended a shopping center industry convention in Las Vegas at which she spoke with Clyde N. Jones

---

[1]Although the court need not discuss in detail the allegedly improper business relationship, it notes that Jones Partners contends that Apopka made, and U.S Bank approved (via Elliott), over $300,000 in improper draw requests against the project loan that ultimately left the project short of funds to pay Jones Partners for its services as project manager.

("Jones"), president of Jones Partners.  In that discussion, Elliot asked Jones if Jones Partners was going to build the project and stated that U.S. Bank and Apopka "really need you to get there and get this thing built."  She also told Jones that there was a "note renewal" on the project and that the interest was "eating [Walker] alive."  Finally, she mentioned that U.S. Bank and Apopka had tried unsuccessfully to get another contractor to build the project.

In June 2002 Jones Partners entered into a contract with Apopka to serve as construction manager for the project.  It had previously worked on at least ten other construction projects with Walker, two of which involved U.S. Bank.  Jones Partners hired a Florida contractor to be general contractor on the project.  Before work began, Elliott had additional telephone conversations with Jones in which she repeatedly inquired when Jones Partners would begin work on the project and repeatedly stated that U.S. Bank and Apopka "really need[ed]" Jones Partners to build the project.

Construction began after December 4, 2002.  On January 1, 2003 U.S. Bank funded a monthly interest expense payment of $7,883.51, thereby exhausting the total loan amount of $1,425,000 and leaving no loan proceeds to pay for construction of the project.  Soon thereafter, Jones Partners began experiencing problems receiving payment from Apopka for its work.  In March Jones met with Walker and discovered that the entire amount of the loan had already been disbursed and that there were no remaining funds to pay Jones

Partners or to complete the project. In May, after attempting to resolve the problem with U.S. Bank and Apopka, Jones Partners stopped construction on the project, which was approximately 85% complete. Jones Partners has been paid approximately $163,000 and, with accrued interest, was owed approximately $740,000 under the Apopka contract as of October 2005.

Jones Partners subsequently brought suit in Texas state court against Apopka for breach of contract and against U.S. Bank for fraud. U.S. Bank removed the case to this court. On February 4, 2005 the court entered an interlocutory default judgment against Apopka. In June 2005 U.S. Bank foreclosed on the project and sold the property for $1,530,000. U.S. Bank moves for summary judgment, and Jones Partners moves for leave to amend its complaint to add, *inter alia*, an unjust enrichment claim.[2]

II

A

U.S. Bank moves for summary judgment as to Jones Partners' fraud claim. Because U.S. Bank will not have the burden at trial as to this claim, it can obtain summary judgment by pointing the court to the absence of evidence to support it. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). U.S. Bank has done this in

---

[2]Jones Partners has filed a jury trial demand, to which U.S. Bank objects, and a motion for trial by jury. The court need not reach these motions in view of its disposition of the motions for summary judgment and for leave to amend.

- 4 -

its motion, pointing to the absence of evidence of an actionable misrepresentation and to the absence of evidence of particular circumstances necessary to impose a duty on U.S. Bank to disclose facts that Jones Partners maintains should have been disclosed.[3] Jones Partners must therefore go beyond its pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). Summary judgment is mandatory if it fails to meet this burden. *Little*, 37 F.3d at 1076.

B

Jones Partners' fraud claim is based principally on the contention that U.S. Bank committed fraud by affirmatively giving it a false impression concerning the availability of loan funds to pay for construction of the project. Alternatively, it posits that U.S. Bank committed fraud by failing to disclose that its diversion of loan funds had left insufficient funds to pay for construction of the project.

Concerning the affirmative misrepresentation component of Jones Partners' cause of action,

---

[3]U.S. Bank also moves for summary judgment on the ground that Jones Partners was an unlicensed contractor in Florida and is therefore barred from recovering for fraud under Texas law. The court need not reach this basis for U.S. Bank's motion.

- 5 -

> [t]o maintain a fraud cause of action against [U.S. Bank] under Texas law, [Jones Partners] must establish that [U.S. Bank] (1) made a material representation, (2) that was false when made, (3) [it] knew the representation was false, or made it recklessly without knowledge of its truth and as a positive assertion, (4) [it] made the representation with the intent that [U.S. Bank] should act upon it, and (5) [U.S. Bank] acted in reliance upon it and suffered injury as a result.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 322 (5th Cir. 2002) (Fitzwater, J.) (citing *Beijing Metals & Minerals Imp. /Exp. Corp. v. Am. Bus. Ctr. Inc.*, 993 F.2d 1178, 1185 (5th Cir. 1993) (applying Texas law)).[4] Both parties agree that Jones Partners must demonstrate that U.S. Bank made a false representation that Jones Partners relied upon. Jones Partners concedes that U.S. Bank, by way of Elliott, "never told [it] a direct lie concerning the amount of loan funds available." P. Br. 12. But it contends that Texas law does not require a direct lie for a party to commit actionable fraud, and that a representation that is literally true is actionable if it is used to create an impression that is substantially false. Jones Partners also posits that a deceptive answer or other indirect but misleading language can be a false representation. It maintains that Elliott's representations and her conduct are actionable because they were calculated to entice Jones Partners to build the

---

[4]Both parties maintain that Texas law controls in this diversity action.

project and to give it the false impression that there would be funds available to pay for construction, when she knew there were insufficient funds.

Jones Partners cites evidence that Elliott solicited Jones at the May 2002 Las Vegas convention to build the Apopka project, asked him whether Jones Partners would build it, and stated that "we really need you to get there and get this thing built." P. Br. 10-11. It then relies on evidence that Elliott told Jones specific facts about the Apopka loan: that there was a "note renewal," that interest on the loan was "eating [Walker] alive," P. Br. 11, and that there had been problems in getting a builder for the project. Finally, it cites evidence that Elliott pressured Jones to get started on the project, which reinforced Jones Partners' false impression that there would be loan funds available to pay for construction.

A fact issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Jones Partners' evidence that U.S. Bank (through Elliott) committed fraud based on the foregoing representations and conduct would not permit a reasonable jury to find in its favor. Rather, the summary judgment evidence would only reasonably permit the finding that Elliott solicited Jones Partners to build a project that involved an existing loan that had been renewed, that there was a real and

urgent need for Jones Partners to build it, that interest on the loan was causing the borrower problems, that there had been problems getting a builder, and that Elliott had pressured Jones to get started on the project. The jury could only reasonably find that, far from creating the false impression that there would be loan funds available to pay for construction, the statements and conduct, if they conveyed any impression, painted the picture of a problem project and a problem loan. There is no evidence in the record that would permit the reasonable finding that Elliott made any representations to Jones Partners, or created a false impression through other statements or conduct, regarding disbursements U.S. Bank had already made on the loan, the status of the loan proceeds, or the availability of funds to complete the project. In fact, Elliott's statements to Jones that interest was "eating [Walker] alive" would have effectively disclosed that loan proceeds had already been disbursed in sufficient amounts that it was impacting Apopka, and that its finances and ability to pay for the project warranted some amount of scrutiny. This inference is also supported by Elliott's disclosure that another contractor had turned down the project.

Accordingly, the court grants U.S. Bank's motion for summary judgment as to the principal ground of Jones Partners' fraud claim.

III

A

Jones Partners contends in the alternative that, by voluntarily disclosing partial loan information, U.S. Bank had a duty to inform it that loan funds had been diverted and that the remaining loan balance was inadequate to pay for Jones Partners' work on the project. It maintains that, once Elliott told Jones at the Las Vegas convention in May 2002 that there was a note renewal and that interest was "eating [Walker] alive," she was required to disclose the whole truth, i.e., that U.S. Bank had already disbursed more than $300,000 on false construction draw requests, so as to avoid leaving Jones with the false impression that there would be adequate loan funds available for construction.

B

Jones Partners recognizes that the failure to disclose a material fact is fraudulent only if the defendant has a duty to disclose. The existence of such a duty is a question of law. *See Cadle Co. v. Wilson*, 136 S.W.3d 345, 354 (Tex. App. 2004, no pet.). The question whether a duty to disclose even exists in Texas absent a confidential or fiduciary relationship is debatable. As the Fifth Circuit recently explained:

> A reasonable jurist might well conclude, certainly after [*Bradford v. Vento*, 48 S.W.3d 749 (Tex. 2001)], that a duty to disclose exists in Texas only in the context of a confidential or fiduciary relationship. This court has so held in [*Coburn Supply Co. v. Kohler Co.*, 342 F.3d 372 (5th Cir. 2003)], the only Fifth Circuit case that discusses the relevant portion of *Bradford*. However, apart from *Coburn,* it would be fair to say that courts after *Bradford* (including this court) have not gotten the message, but have instead continued to find that a duty to disclose can exist in Texas absent a confidential or fiduciary relationship.

*United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 566 (5th Cir. 2005). Jones Partners does not contend there was a confidential or fiduciary relationship between it and U.S. Bank. If such a relationship is in fact required under Texas law, Jones Partners' alternative claim falters on that basis alone. As in *United Teacher Associates*, however, this court "need not decide whether a duty to disclose exists in Texas absent a confidential or fiduciary relationship because, even if such a duty did exist, [Jones Partners'] fraud claim would fail." *Id.; see Smith v. BCE Inc.*, 2005 WL 3454104, at *10-*11 (W.D. Tex. Nov. 29, 2005) (observing muddled state of law on fraud by omission and holding that plaintiff nevertheless failed to establish duty to disclose at summary judgment).

Moreover, the court has already concluded *supra* at § II(B) that the partial disclosures made, when viewed in light of other conduct and representations by U.S. Bank, failed to create a false

- 10 -

impression regarding disbursements U.S. Bank had made on the loan. It is not clear that Jones Partners can assert a separate, alternative claim that U.S. Bank possessed a duty to disclose the whole truth to avoid leaving Jones Partners with this same false impression. *Compare Union Pac. Res. Group, Inc. v. Rhône-Poulenc, Inc.*, 247 F.3d 574, 586 (5th Cir. 2001) (observing four circumstances where duty of disclosure arises and treating whole truth and false impression claims as one and the same) *with Citizens Nat'l Bank v. Allen Rae Invs., Inc.*, 142 S.W.3d 459, 477 (Tex. App. 2004, no pet.) (on rehearing) (outlining four circumstances where duty of disclosure arises and distinguishing false impression from whole truth claims). The court will also assume *arguendo* that a duty to disclose the whole truth exists, even where the disclosures made did not leave an incorrect or false impression.

C

To avoid summary judgment, Jones Partners must adduce evidence that U.S. Bank voluntarily disclosed "some but less than all material facts," *Rimade Ltd. v. Hubbard Enterprises, Inc.*, 388 F.3d 138, 143 (5th Cir. 2004) (internal quotation marks omitted), such that "the whole truth must be disclosed," *Citizens National Bank*, 142 S.W.3d at 471, 477. Although issues of materiality typically arise in determining whether omitted information would have been material to the decisionmaker, in the duty to disclose context, the

- 11 -

partial disclosures must likewise be "material" to the alleged omission.  *See Citizens Nat'l Bank*, 142 S.W.3d at 478-79 ("'Material information' is that which a reasonable person would attach importance to and would be induced to act on in determining his choice of actions in the transaction in question.").  In other words, the partial disclosures made must reach a threshold level of relevance to the concealed information such that "the whole truth" must be disclosed.  *See Citizens Nat'l Bank*, 142 S.W.3d at 477 (upholding jury verdict of fraud against defendant-bank, finding, *inter alia*, that partial representations that investment was "good deal" and that customer "should go forward" gave rise to duty to disclose that bank was specifically not recommending investment to other customers).[5]  Conversely, a duty to disclose is not triggered where the partial disclosures made are immaterial.  *See, e.g., Fleming v. Tex. Coastal Bank of Pasadena,* 67 S.W.3d 459, 460-62 (Tex. App. 2002, pet. denied) (affirming summary judgment award to defendant-bank, concluding, *inter alia*, that partial disclosures that investment promoter was "good customer" and "he had good business" did not give rise to duty to disclose specific banking information about promoter).[6]

---

[5]For instance, partial disclosures regarding Contract A are, in most circumstances, unlikely to give rise to a duty to disclose information about Contract B.

[6]Jones Partners directs the court by two string citations to sixteen cases but analyzes only *Citizens National Bank*, 142 S.W.3d at 477-79.  *See* P. Br. 13-14.  Having reviewed the other cases, the

D

Although the question whether U.S. Bank had a duty to disclose is one of law, the existence of a duty *vel non* turns on the materiality of the partial disclosures U.S. Bank made. *Cf., e.g., Taylor v. GWR Operating Co.*, 820 S.W.2d 908, 912 (Tex. App. 1991, writ denied) ("Although the question of fiduciary relationship is a question of law, the underlying elements of fiduciary duty are questions for the fact finder."). Therefore, the court must address whether a reasonable jury could find as a factual matter that U.S. Bank made partial disclosures that could give rise to a duty of disclosure as a matter of law.[7]

Jones Partners urges that representations about the loan's renewal and the effect of interest on the borrower gave rise to a duty to disclose other information about the loan. Indeed, a reasonable jury *could* find based on these disclosures that U.S. Bank had a duty to disclose additional information concerning the loan's renewal or interest on the loan. Jones Partners urges,

---

court holds that they are generally inapposite, but it also notes that Jones Partners fails to apply them to the facts of this case.

[7]When the court hereafter addresses whether a reasonable jury could find that U.S. Bank had a duty of disclosure, it is at all times analyzing whether the jury could find that the limited disclosures that could give rise to a duty of disclosure as a matter of law. If the court assumes *arguendo* that the question presented is purely one of law, it would hold, for the reasons explained, that U.S. Bank did not have a duty to disclose information about the status of loan disbursements or the availability of loan funds as a result of the narrow and limited disclosures that Elliott made to Jones.

- 13 -

however, that the disclosures gave rise to a duty by U.S. Bank to disclose information unrelated to the loan's renewal or to the effect of interest and instead to provide details related to the availability of loan proceeds to pay Jones Partners or to how the loan proceeds had theretofore been used (i.e., diverted).

The two limited disclosures that Elliott made would not permit a reasonable jury to find that U.S. Bank's conduct gave rise to a duty to disclose the information that Jones Partners argues should have been revealed.  Elliott's representations about the loan's existence and that interest was "eating [Walker] alive" are too attenuated and irrelevant to the status of loan disbursements for a reasonable jury to find that disclosure of one gave rise to an obligation to disclose the other.  If, for instance, Elliott had provided greater details about the financing of the project, had disclosed information about payments of construction draws, or had offered Jones Partners any assurances about being paid or even regarding the soundness of Apopka's finances, a reasonable jury could find that these disclosures in turn triggered a duty on U.S. Bank's part to disclose that loan funds had been diverted and that little or no funds remained to pay Jones Partners.  But Jones Partners seeks to impose a broad duty to disclose specific information about the financing of the project based on two limited statements that a loan existed, had been renewed, and was causing problems for the borrower.  A reasonable jury could only conclude

- 14 -

that Elliott's statements were not material in the sense relevant here: that they gave rise to a duty on behalf of U.S. Bank to disclose that it had already disbursed more than $300,000 on questionable construction draw requests.

Because the court concludes that U.S. Bank had no duty to disclose that loan funds had been disbursed and would not be available to pay Jones Partners in full, it concludes as a matter of law that Jones Partners cannot recover on its alternative fraud claim.

IV

Before U.S. Bank filed its summary judgment motion, Jones Partners filed a motion for leave to amend its complaint to add an unjust enrichment theory of recovery, to update and correct the damage calculation, and to plead that the statutory cap on punitive damages is inapplicable. Concluding that the amendment would be futile, the court denies the motion.

A

> Leave to amend should be freely granted when justice requires. District courts, however, have discretion to manage their docket. Accordingly, although a district court's discretion to deny leave to amend is limited, leave to amend is *not* automatic. Nevertheless, there is a strong presumption in favor of granting leave to amend; to this end, a district court may be reversed for failing to provide an adequate explanation for denying it.

*Fin. Acquisition Partners L.P. v. Blackwell*, ___ F.3d ___, 2006 WL

330120, at *11 (5th Cir. Feb. 14, 2006) (citations omitted). A court may deny leave to amend, however, when the amendment would be futile. *See, e.g., FDIC v. Conner*, 20 F.3d 1376, 1385 (5th Cir. 1994) (holding that "leave to amend need not be granted when it would be futile to do so"). An amendment would be futile when "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000).

B

Jones Partners' motion is moot with respect to punitive damages and an updated damage estimate in light of the court's determination that Jones Partners is not entitled to recover from U.S. Bank committed fraud.

Jones Partners' unjust enrichment claim would also be futile in light of the court's summary judgment ruling. Jones Partners specifically asserts that, in seeking leave to amend, it "does not seek to add any new causes of action." P. Br. 3; *see also Oxford v. Williams Cos.*, 137 F.Supp.2d 756, 762 (E.D. Tex. 2001) ("Unjust enrichment is not an independent cause of action but is instead a measure of damages which places the aggrieved plaintiff in the position he occupied prior to dealing with the defendant."); *City of Corpus Christi v. Heldenfels Bros., Inc.*, 802 S.W.2d 35, 40 (Tex. App. 1990) ("Unjust enrichment is probably not an independent cause of action but merely characterizes the result whereby one

- 16 -

fails to make restitution of benefits under circumstances which give rise to an implied or quasi-contractual obligation to return such benefits."), *aff'd*, 832 S.W.2d 39 (Tex. 1992). Accordingly, even if Jones Partners amended its complaint to include an unjust enrichment contention on the basis it proposes, it would fail to state any causes of action against U.S. Bank following the dismissal of the fraud claim.

Moreover, Jones Partners asserts that U.S. Bank would be "unjustly enriched" because, "as a result of the recent foreclosure sale, [U.S. Bank] has received money directly resulting from the improvements constructed by [Jones Partners] on the property in question, *for which [Jones Partners] has never been paid due to [U.S. Bank's] fraud.*" P. Br. 3. Jones Partners' unjust enrichment assertion is premised on U.S. Bank's alleged fraud concerning Jones Partners' failure to receive payment for the construction. *See Burlington N. R.R. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex. App. 1996) ("Unjust enrichment is typically found under circumstances in which one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."), *aff'd*, 966 S.W.2d 467 (Tex. 1998). The court has concluded, however, that Jones Partners has failed to present a genuine issue of fact concerning this fraud claim. The dismissal of the fraud claim thus eliminates the predicate for Jones Partners' request for leave to add an unjust enrichment claim.

Accordingly, Jones Partners' motion for leave to amend its complaint is denied.

V

As the court notes above, on February 4, 2005 the court entered an interlocutory default judgment against Apopka. The order provides that Jones Partners shall recover from Apopka "such sum of money as may be proved on the trial of this cause . . . ." Feb. 4, 2005 Order at 1. The order also provides that at the time of trial, or at "such other time as may be proper, a final judgment shall be rendered, and this interlocutory judgment shall be finalized in accord with that judgment." *Id.* at 2.

Because there will be no trial of this case, the court directs Jones Partners to contact the judicial secretary to arrange to appear before the court to present its evidence in support of its damages claim against Apopka.

\*   \*   \*

For the reasons set out, the court grants U.S. Bank's motion for summary judgment, denies Jones Partners' motion for leave to amend its complaint, and dismisses with prejudice its action U.S. Bank by Rule 54(b) final judgment filed today.

**SO ORDERED.**

March 27, 2006.

*[signature]*
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE